UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Kelly T., | Case No. 20-cv-1915 (WMW/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi,<br>*Acting Commissioner of Social Security*, | |
| Defendant. | |

---

## INTRODUCTION

Claimant Kelly T. appeals the Commissioner of Social Security's denial of her application for disability insurance benefits. Claimant contends that the Administrative Law Judge (ALJ) erred when she (1) failed to include in the Residual Functional Capacity (RFC) and the hypothetical question limitations for impairments the ALJ found credible; and (2) failed to accommodate impairments the ALJ found severe. For the reasons stated below, the Court concludes the ALJ was not required to find additional or different limitations and did not fail to accommodate severe impairments. Accordingly, the Court recommends that Claimant's motion for summary judgment be denied and that the Commissioner's motion be granted.

## FINDINGS OF FACT

**I.    Background**

On December 29, 2017, Claimant applied for disability insurance benefits. R. 15, 263, 298.[1] Claimant contends she suffers from several conditions which cause her pain and affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, hear, climb stairs, see,

---

[1] "R." refers to the Administrative Record. Dkt. No. 18.

remember, concentrate, finish tasks, follow instructions, and get along with others. R. 279. She asserts that, because of her conditions, she needs assistance getting in and out of bathtubs, needs reminders for medication and hygiene tasks, no longer practices some forms of personal care or grooming, cannot drive a car, cannot do some house or yard work, and occasionally uses a non-prescription walker or cane. R. 275-77. Claimant alleges her symptoms forced her to quit her employment in June 2012. R. 263-64.[2]

After Claimant's application was denied initially and on reconsideration, she requested a hearing before an ALJ. R. 15, 123-24, 249. Claimant participated in a video hearing before ALJ Amy Budney, at which Claimant and a Vocational Expert (VE) testified. R. 41-90. Claimant testified about her past work experience and various physical and mental health challenges. R. 46-81.

The VE testified that Claimant's previous relevant work as a customer service representative was a skilled occupation and that Claimant's work as a lab tester was a semi-skilled occupation, classified and performed at light exertion. R. 83. The ALJ presented the VE the following hypothetical:

> Please assume a hypothetical individual of the claimant's age, education, and work experience who is able to perform light exertional work activities with the following limitations. The individual can lift, carry, push, pull 20 pounds occasionally, 10 pounds frequently[,] can sit for six hours, stand and/or walk four hours out of an eight-hour day, for 30 minutes at a time[,] can frequently push and pull, occasionally use foot controls bilaterally, occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. The individual should never climb ladders, ropes, and scaffolds, or crawl[,] should avoid concentrated exposure to extreme cold, wetness, humidity[, and] should never be exposed to unprotected heights and dangerous moving mechanical parts. Could that hypothetical individual perform any of the last jobs as actually worked or generally worked?

---

[2] Claimant initially alleged a disability-onset date of June 30, 2012, but later amended the date to April 19, 2017. R. 15, 43, 221.

R. 83-84. The VE stated the person could perform both past jobs as classified and performed. The ALJ asked if the person could perform any other work and the VE said "Yes" and provided examples. R. 84. Claimant's attorney also asked the VE, "If I were to limit this individual to occasional reaching in all directions, would that allow for this individual to perform any of the past work or other work that you cited a moment ago in your testimony?" The VE responded "No." R. 88. After closing remarks, the ALJ took the matter under advisement.

## II.   The ALJ decision

An ALJ uses a five-step sequential evaluation process to determine whether a claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(a). The ALJ evaluates "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or approximates, a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *Brock v. Astrue*, 674 F.3d 1062, 1064 n.1 (8th Cir. 2012); *see also* 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found Claimant had not engage in substantial gainful activity during the relevant period. R. 18. At step two, the ALJ found that Claimant had the following severe impairments:

> exaggerated lordotic curve with dextrorotation; thoracic fusion from T9-T12; plantar fascial fibromatosis; degenerative disc disease of the cervical and lumbar spine; lumbosacral, lumbar, and thoracic radiculopathy; lumbar stenosis and spondylosis; lumbosacral spondylosis; cervical stenosis; post-laminectomy syndrome; degenerative changes of the right acetabulum; mild osteonecrosis of the right femoral head; chronic regional pain syndrome (CRPS) of the left foot and ankle; and status post-implantation of spinal cord stimulator (SCS) generator.

R. 18-19. The ALJ also found two medically determinable mental impairments: major

depressive disorder and anxiety. R. 19. The ALJ analyzed the four areas of mental functioning known as "paragraph B" criteria—understanding, remembering, and applying information; concentrating, persisting, or maintaining pace; interacting with others; and adapting or managing oneself—and found the impairments were non-severe because, considered singly and in combination, they did not cause more than minimal limitation in Claimant's ability to perform basic mental work activities. R. 19-21. The ALJ noted that the limitations identified in the "paragraph B" criteria were not an RFC assessment but were used to rate the severity of mental impairments at steps two and three. R. 21.

At step three, the ALJ determined Claimant's impairments do not meet or medically equal any listed impairment contained in 20 C.F.R., Part 404, Subpart P, Appendix 1. R. 22. At step four, the ALJ concluded Claimant had the RFC to perform sedentary work, subject to the following additional limitations:

> The claimant could [] lift/carry/push/pull ten pounds occasionally and ten pounds frequently. She could sit for six hours. She could stand and/or walk two hours out of an eight-hour workday and for thirty minutes at a time. The claimant could frequently handle, finger, and reach. She [] could frequently push and pull. The claimant could occasionally use foot controls bilaterally. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. She could never climb ladders, ropes, and scaffolds or crawl. The claimant must have avoided concentrated exposure to extreme cold, extreme heat, vibrations, wetness, and humidity as well as dust, odors, fumes, and pulmonary irritants. She could never be exposed to unprotected heights and dangerous moving mechanical parts.

R. 23. The ALJ found Claimant's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but also found Claimant's statements concerning the intensity, persistence, and limiting effects were not entirely consistent with the evidence. R. 25. The ALJ found the State agency psychological consultants' opinions that Claimant had no more than mild mental functional limitations persuasive. R. 26. She also found

4

Claimant "occasionally presented as anxious and agitated" but concluded that medical professionals consistently described Claimant as cooperative, alert, and oriented with normal mood, affect, behavior, memory, thought process, speech, insight, judgment, grooming, hygiene, and fund of knowledge. R. 26. The ALJ found a psychological consultative examiner's opinion from 2013 and 2015 unpersuasive because it was offered years before Claimant's asserted onset date. The ALJ concluded Claimant retained the ability to perform work within the parameters of the RFC. R. 27. Based on the RFC determination, the ALJ found Claimant was capable of performing past relevant work as a technical support/customer service representative. R. 28.

At step five, the ALJ found Claimant could perform other jobs that existed in significant numbers in the national economy, including data entry clerk, receptionist, and appointment clerk. R. 28-30. Accordingly, the ALJ concluded Claimant was not disabled. R. 30. Claimant now seeks judicial review pursuant to 42 U.S.C. § 405(g).[3]

## CONCLUSIONS OF LAW

**I.   Standard of Review**

Disability under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the regulations, disability means that the impairment(s) is/are so severe that the claimant is not only unable to engage in previous work but cannot engage in any other kind of substantial gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A). The

---

[3] Claimant filed an earlier disability application in October 2014, which was unsuccessful. R. 16, 94, 103. Claimant does not challenge the 2014 application decision in this action.

claimant bears the burden of proving entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a)(1); *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

This Court has authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing a decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (sentence four). The Court must uphold the Commissioner's decision if it is supported by substantial evidence in the record as a whole and is not based on legal error. *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018). Substantial evidence is "less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion." *Id.* (quotation and alteration omitted). The Court "must consider evidence that supports and detracts from the ALJ's decision." *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.* (quotation omitted).

II. **Analysis**

    A. **Mental limitations**

        1. **RFC determination**

Claimant first argues that the ALJ failed to include any mental limitations in the RFC after finding Claimant had mild limitations in all four areas of mental functioning as part of the psychiatric review technique (PRT). *Id.* at 3-10. A PRT is used when evaluating the severity of mental impairments at step two and in determining whether the impairments are listed at step three. *Cuthrell*, 702 F.3d at 1116 (8th Cir. 2013). If a claimant's impairments do not meet or equal one of the listed impairments, the ALJ must determine whether the

claimant retains the RFC to perform her past relevant work. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). RFC is defined as the most a claimant can do despite her physical and mental limitations. *Hensley v. Colvin*, 829 F.3d 926, 931 (8th Cir. 2016). An ALJ must consider all of Plaintiff's relevant, credible impairments (including those that are non-severe) in the RFC formulation. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016). ALJs "must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4 (S.S.A, July 2, 1996).

The PRT for the assessment of alleged mental impairments must be consistent with the ALJ's RFC determinations. *See Chismarich*, 888 F.3d at 980 ("As a general proposition, this assertion is unobjectionable and correct."). "As a practical matter, however, the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized." *Id.* (citing *Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006) ("Each step in the disability determination entails a separate analysis and legal standard.")).

Claimant does not contest the ALJ's findings that her depression and anxiety were non-severe impairments that caused mild limitations. Cl. Reply 1, Dkt. No. 24. She argues the ALJ found, at step two, Claimant's depression and anxiety caused mild limitations in all four areas of mental functioning yet failed to include any corresponding limitations in the ALJ's RFC findings at step four. She asserts that even though these impairments were found to be non-severe, they "must be accounted for in the RFC," and that "all limitations found credible by the ALJ must be incorporated into the RFC in some form." Cl. Mot. Summ.

J. 5.

Here, the ALJ found Claimant's depression and anxiety cause mild limitations in Claimant's ability to perform basic mental work activities, thus the ALJ was required to consider the impairments when determining Claimant's RFC. *Mabry*, 815 F.3d at 390. The ALJ did so. In evaluating the severity of Claimant's mental impairments at step two and three, the ALJ used the "special technique" set out in 20 C.F.R. § 404.1520a. After examining Claimant's psychological history, the ALJ found that even though Claimant had testified to significant functional limitations, "a comprehensive review of the evidence of record established [Claimant] retains the capacity to perform a reduced range of sedentary exertional work with the aforementioned exertional, postural, foot control, manipulative, and environmental restrictions." R. 25.

The ALJ found the opinions of agency psychological consultants Jeffrey Boyd, Ph.D. and Maria Yapondjian-Alvarado, Psy.D., persuasive. R. 26. These agency doctors concluded that, based on the evidence in the record, Claimant's depression and anxiety are "not imposing any significant work related limitations." R. 117, 133. The ALJ found their conclusions to be supported by the record as a whole, stating that while Claimant "occasionally presented as anxious and agitated, medical professionals consistently described her as cooperative, alert, and oriented with normal mood, affect, behavior, memory, thought process, speech, insight, judgment, grooming, hygiene, and fund of knowledge." R. 26. Claimant does not challenge the ALJ's findings in this respect. While the ALJ did not use the exact words found in "paragraph B," the ALJ explicitly considered each of Claimant's mental impairments that caused mild limitations to determine the RFC. The fact that the ALJ concluded for purposes of step two that Claimant's mental impairments

were "mild" and not "none" does not mean that an RFC *must* include mental functioning limitations. Rather, when mental impairments are not severe, they still must be evaluated for purposes of steps four and five and the ALJ must make an assessment of Claimant's mental impairment in the context of determining an appropriate RFC.

This Court must conduct a limited and deferential review of the final agency determination and must strive to harmonize statements when possible. *Chismarich*, 888 F.3d at 980. The ALJ's findings in step two can be harmonized with the ALJ's analysis in step four as the ALJ found mild limitations in step two and considered those limitations in step four, ultimately determining Claimant retained the ability to perform work within the parameters of the RFC. Because the ALJ considered Claimant's mild limitations in determining the RFC and the record as a whole supports the ALJ's conclusion that Claimant's non-severe mental impairments did not limited her ability to work, the ALJ did not err in omitting the mild limitations from the RFC.

### 2. VE hypothetical

Claimant next argues the ALJ should have adopted mental limitations in the hypothetical posed to the VE. Cl. Mot. Summ. J. 3-6. A VE's opinion may be relevant to an ALJ's decision if the ALJ accurately characterizes a claimant's medical conditions in hypothetical questions posed. *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004). A hypothetical question need only include the impairments and limitations that the ALJ finds are credible and substantially supported by the record as a whole. *See Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017). A hypothetical question "should capture the 'concrete consequences' of those impairments." *Lacroix*, 465 F.3d at 889 (citation omitted).

Claimant contends that, because the RFC did not accommodate her mild mental

9

limitations, the hypothetical questions posed to the VE were flawed and require remand. Cl. Mot. Summ. J. 3-6. The Court has determined the ALJ did not omit necessary limitations from the RFC. Because the RFC did not erroneously omit mental limitations, the hypothetical question to the VE was not deficient. *See Lane*, 650 Fed. Appx. at 911 (concluding that because the RFC did not erroneously omit claimant's claimed restrictions, the hypothetical question to the VE was proper); *Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (same).

The Court finds that the ALJ was not required to incorporate Claimant's nonsevere mental impairments into the RFC because her determination that Claimant's impairments did not cause any limitation on her ability to work is supported by substantial evidence in the record as a whole. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 447 (8th Cir. 2004); *see also Lane*, 650 Fed. Appx. at 911; *Gilbertson v. Astrue,* No. 09-cv-1824 (PJS/AJB), 2010 WL 5690391 at *16 (D. Minn. Sept. 20, 2010). Accordingly, the RFC was properly supported by substantial evidence and the ALJ was not required to include mental impairments in the hypothetical question. The ALJ did not err in finding that Claimant could perform her past relevant work and other work existing in significant numbers in the national economy because that conclusion was not based on an erroneous RFC or an improper hypothetical question posed to the VE.

### B.   Accommodation for severe impairments

Claimant next argues that the ALJ erred because the RFC did not include physical limitations regarding Claimant's degenerative disc disease of the cervical spine and CRPS of the left foot and ankle even though the ALJ found those impairments severe. R. 10-12. Claimant asserts the ALJ's finding that the cervical spine impairment was severe was an

inherent finding that Claimant "had significant limitations on her ability to use her neck and arms to perform the basic activities of work. Yet, the ALJ adopted no corresponding limitations whatsoever in her residual functional capacity finding." Cl. Mot. Summ. J. 10. Claimant likewise argues that "the ALJ adopted no limitations related to [Claimant's] CRPS of the left foot and ankle." *Id.* at 11.

A claimant has the burden of persuasion to demonstrate the RFC and prove disability. *Perks*, 687 F.3d at 1092. The ALJ's RFC determination must be supported by some medical evidence of the claimant's ability to function in the workplace, but the RFC is ultimately an administrative determination. *Id.*

First, the ALJ did find limitations on the use of Claimant's neck, arms, foot, or ankle including pushing, pulling, standing, walking, reaching, using foot controls, climbing ladders or scaffolds, and crawling. Indeed, with respect to her cervical disc disease, the ALJ stated she "included additional manipulative limitations to account for the fact that diagnostic scans of the cervical and lumbar spine performed several months after the date last insured showed worsening degenerative changes." R. 26. With respect to Claimant's CRPS, the ALJ noted Claimant typically did not need aggressive treatments during the relevant period, that her pain improved somewhat with treatment, and that while her "impairments are not as limiting as alleged, the [ALJ] has restricted her to sedentary work . . . to accommodate any limitation her impairments may have caused during the relevant period." R. 25.

Claimant asserts that the ALJ adopted no limitations on her "ability to perform overhead work, rotate her neck or head, maintain her head in a static position, or perform any other activities with her arms or neck." Cl. Mot. Summ. J. 11. To the extent that Claimant argues the ALJ should have found additional restrictions in these areas, Claimant

cites only to the 2019 opinion from treating physician, Bryan Pucik, M.D. She argues remand is necessary because the ALJ failed to give Dr. Pucik's opinion deference and rejected the opinion because the record did not support it. Cl. Mot. Summ. J. 12.

Dr. Pucik's opinion was offered on August 5, 2019, through a four-page form in which he checked boxes, filled in blanks, and provided brief explanations of the medical findings to support his opinions. R. 1200-04. He opined that Claimant could sit for a total of five to ten minutes per workday; cannot stand or walk; can carry one pound; can never climb, balance, stoop, crouch, kneel, crawl, handle, finger, push, or pull; can occasionally see, hear, and speak; and can reach less than occasionally. R. 1200-02.

Because Claimant filed her claim in December 2017, the ALJ's evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. *Pemberton v. Saul*, 953 F.3d 514, 517 n.2 (8th Cir. 2020). Under this regulation, the ALJ does not defer to any medical opinions, including opinions from the claimant's treating medical source. 20 C.F.R. § 404.1520c(a). The ALJ noted Dr. Pucik had treated Claimant for five to six years, but the ALJ found Dr. Pucik's opinion unpersuasive because it was offered almost eight months after Claimant's date last insured and did not relate to the period at issue. R. 27. Additionally, the ALJ found the opinion was not consistent with or supported by the objective evidence in the record. R. 27. Specifically, the ALJ observed that "physical examinations typically revealed [Claimant's] gait, strength, sensation, and reflexes were normal with no signs of focal deficits." R. 27; *see also* R. 25, 459, 474, 533, 572, 640, 808, 818.

Dr. Pucik offered no limitations opinion on Claimant's ability to perform overhead work, rotate her neck or head, maintain her head in a static position, or refer specifically to any "activities with her arms or neck." R. 1200-03. Claimant cites to no other evidence in the

12

record to conclude such restrictions are necessary in light of her cervical degenerative disc disease. Thus, the ALJ did not err in her RFC determination and the ALJ's decision to deny Claimant's disability application is supported by substantial evidence in the record.

### C. Conclusion

For the reasons stated above, the ALJ did not err in her RFC determination or hypothetical questions. There is substantial evidence in the record as a whole to support the ALJ finding that Claimant is not disabled. Accordingly, the Court recommends the Commissioner's decision be affirmed.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT:

1. Claimant's Motion for Summary Judgment [Dkt. No. 19] be DENIED; and

2. Defendant's Motion for Summary Judgment [Dkt. No. 22] be GRANTED.

Dated: January 26, 2022                               ____s/David T. Schultz_____
                                                      DAVID T. SCHULTZ
                                                      U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.